IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**ROGER LEE**                                                                         **PLAINTIFF**

**VERSUS**                                       **CIVIL ACTION NO. 2:08cv203KS-MTP**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY AND JOHN DOES
A, B, C, D, AND E**                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#29]** filed on behalf of defendant State Farm Mutual Automobile Insurance Company ("State Farm"). The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

The plaintiff, Roger Lee, was rear-ended by Kathleen Kelly on August 15, 2007, near Brookhaven, Mississippi. At the time of the accident, Lee was driving a company vehicle and acting in the course and scope of his employment with Hattiesburg Beverage Company. Lee sought treatment for injuries to his neck the next day and was diagnosed with a disk bulge at C-4/C-5 and a herniated disk, protruding into, touching

and indenting the spinal cord, at C-5/C-6, both located at the base of the neck. These surgical lesions resulted in a multi-level spinal fusion on October 30, 2007. Lee has incurred approximately $60,000 in medical expenses to date. The plaintiff applied for and received worker's compensation benefits thorough his employer as a result of the accident.

At the time of the accident, Kathleen Kelly had a policy of automobile liability insurance with Mississippi Farm Bureau Insurance Company with a per person bodily injury liability limit of $25,000.00. After investigating the plaintiff's claim, Farm Bureau tendered policy limits to Lee in January 2008. On January 31, 2008, Lee hired an attorney to prosecute his claim.

On or about March 3, 2008, State Farm's claims department received notice from Lee's counsel that the plaintiff was making a claim for underinsured motorist ("UM") coverage under his State Farm automobile policies. The plaintiff had four auto policies in force with State Farm at the time of the accident. Three of the policies had UM limits of 25/50 with the fourth policy having rejected UM coverage. The plaintiff was entitled to stack the coverages under his policies but pursuant to the terms of the policies, State Farm was entitled to an offset credit of $25,000.00 for the settlement offered by Farm Bureau on behalf of Kathleen Kelly.

After receiving notice of the plaintiff's UM claim, State Farm undertook its investigation and assigned an adjuster. State Farm admits that its investigation quickly established 100% fault on Kelly for the accident. The defendant also admits that the plaintiff requested that State Farm consent to the settlement with Kelly and waive its subrogation rights.

As part of its investigation, State Farm requested medical bills and records from the plaintiff. It also sought information from the plaintiff's employer about possible additional primary undersinsured insurance coverage and information about the plaintiff's worker's compensation claim. State Farm received the first medical bills and records from the plaintiff's counsel on or about April 14, 2008. On May 6, 2008, State Farm consented to the Kelly settlement and waived its subrogation rights.

On or about June 25, 2008, the plaintiff provided additional medical records and bills to State Farm with a demand letter seeking policy limits. On July 14, 2008, State Farm received a copy of the plaintiff's employer's rejection of UM coverage under its policy and State Farm admits that this information resolved the issue of potential primary UM coverage from this source.

A review of the plaintiff's medical records and claim materials and the allegedly minimal damage to the vehicles involved in the accident caused State Farm to question causation and damages related to the accident. Specifically, State Farm found that the plaintiff had a prior injury to the same area of his neck as allegedly was injured in this accident for which he had filed suit. Thus, State Farm hired an attorney, Herman Hollensed, to investigate the causation and damages issues presented.

By letter of August 18, 2008, Hollensed requested a statement under oath from the plaintiff and enclosed a Medical Authorization to allow State Farm access to records from the plaintiff's prior injuries. The plaintiff signed and returned the Authorization on August 27, 2008. The statement under oath was scheduled by agreement with the plaintiff's counsel for September 11, 2008.

However, on August 20, 2008, the plaintiff filed the instant suit alleging breach of

contract and bad faith refusal to pay the claim. Service of process was obtained on State Farm on August 22, 2008. On September 11, the plaintiff appeared for his statement under oath, but State Farm did not. State Farm's counsel had apparently cancelled the statement under oath by an email sent to the plaintiff's counsel and it is not clear whether such was communicated timely to the plaintiff.

State Farm asserts that once suit was filed, it "processed Plaintiff's claim and the investigation of it pursuant to Court rules and requirements regulating the parties to the civil suit filed by Plaintiff." State Farm further avers that "[w]ith information obtained under the regulated discovery procedure and schedule of this Court, State Farm was able to obtain sufficient information to make its evaluation and decision on the UM claim . . .. " As a result, State Farm tendered $50,000.00 to the plaintiff on May 6, 2009, which it contends is the $75,000.00 stacked limits less the offset credit for the Kelly settlement of $25,000.00.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The

movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

State Farm has moved for summary judgment arguing first that all contractual UM benefits due the plaintiff have been paid. The plaintiff has not argued against this portion of the motion nor has he presented any evidence to refute the entitlement of the defendant to summary judgment on this claim. The position of the plaintiff is just as well because the language of the State Farm policies clearly indicate that State Farm's policy limits are $75,000; that State Farm is entitled to an offset of $25,000 for the Kelly settlement; and that State Farm has tendered the amount of its obligation of $50,000 to the plaintiff. Therefore, summary judgment in favor of the defendant on the plaintiff's contractual claim is warranted.

State Farm has also moved for summary judgment on the plaintiff's remaining bad faith claim. The plaintiff has responded and strongly refutes the defendant's entitlement to judgment on this claim.

It is well settled in Mississippi that punitive damages are to be assessed only in extreme cases. See *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985). "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss.1988). Further,

> [a]s a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong. The kind of wrongs to which punitive damages are applicable are those

> which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others.

*Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1215 (Miss.2000) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So.2d 226, 233 (1962)).  See also, *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 442 (Miss.1999).  "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule."  *Id.* (citing 15 Am.Jur., Damages, Sec. 265, p. 698).  When deciding whether to submit the issue of punitive damages to a trier of fact, the court is required to examine the totality of the circumstances as established by the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard in order to justify the imposition of punitive damages.  See *Ross-King-Walker, Inc. v. Henson*, 672 So.2d 1188, 1191 (Miss.1996).

Based on the foregoing well settled principles of law, the Mississippi Supreme Court has instructed that "in order for the issue of punitive damages to warrant jury consideration, [the plaintiff] must show that a question of fact exists as to whether the aggregate of [the defendants'] conduct . . . evidences willful or wanton conduct or the commission of fraud."  *Bradfield v. Schwartz*, --- So.2d ----, 2006 WL 1350051, *5 (Miss. 2006).

The plaintiff argues that his "claim was adjusted by three different professional entities, as well as their related vendors."  Specifically, "[t]he claim was adjusted by Gallagher-Bassett Services (GBS), one of the world's largest independent adjusting

services, for the workers' compensation carrier of Lee's employer, Hattiesburg Beverage [, and] . . . by the faulted driver's liability carrier, Mississippi Farm Bureau, the largest casualty insurance company incorporated and headquartered in the State of Mississippi." Finally, he also points out that State Farm adjusted the claim.

The reason for pointing out the above obvious information is to support the plaintiff's contention that neither of the other two adjusting entities gave any heed to the prior injury of the plaintiff in reaching their decisions. However, there is no information that either GBS or Farm Bureau even knew about the prior injury. Regardless, it is of no moment whether they knew of it and considered it or not. State Farm has a right and a duty to fully investigate any claim presented to it for payment. Reliance on another insurance company's adjustment of a claim could prove perilous. Indeed, if GBS or Farm Bureau had denied the claim and State Farm relied on their conclusions, it would be before the court on a bad faith claim for failure to investigate and the plaintiff would be arguing just as vehemently that State Farm had no justifiable reason to rely on them. This argument carries no weight for the court.

The plaintiff next argues that the plaintiff's 2004 claim was actually adjusted by State Farm and that it had all of the information all along regarding that claim. However, State Farm did not make the connection between the two claims until on or about August 1, 2008, when it ordered the prior claim file. This delay certainly does not rise to the level of bad faith. It is true that it is almost five months after State Farm received notice of the plaintiff's claim. But, the plaintiff had counsel and he and State Farm were cooperating in securing primary coverage information from the plaintiff's employer and securing complete medical records and bills. The full medical records and bills were

received on or about June 25, 2008, with plaintiff's counsel's demand letter. Resolution of the employer's primary coverage issue was reached on or about July 14. Discovery of the prior claim until August 1 is not an unreasonable delay and State Farm immediately began follow-up by contacting the plaintiff for a medical authorization and a statement under oath.

The 2004 claim file indicated that the plaintiff allegedly suffered three herniated discs, which were the same three allegedly injured in the 2007 accident. He incurred over $10,000 in medical bills and received epidural steroid injections for that injury and filed suit against the responsible party for that injury. This, taken in conjunction with the fact that this accident involved a low speed collision with minimal vehicle damage and no report of injury at the scene certainly can be considered to have given State Farm adequate reason to fully investigate this claim.

Thereafter, the plaintiff filed suit on August 20, 2008, just nineteen days after State Farm discovered and requested the prior claim file. At that point, the defendant was bound by the court rules as to discovery and information relative to the claim. After receiving all of the relevant medical information related to the present injury, State Farm made the decision that the plaintiff's damages from injuries received on August 15, 2007, likely exceeded its policy obligation of $50,000, and paid the claim on May 6, 2009.

While the court finds that State Farm's adjustment of this claim does not rise to a level which justifies the imposition of punitive damages, State Farm could certainly have done better. It had every right and even a duty to be deliberate and diligent. That is not a license to unreasonably delay the payment of a legitimate claim. If State Farm had

delayed paying this claim for fourteen months without suit having been filed, there could well be a different outcome. However, since the plaintiff chose to file suit a little over five months after State Farm was first notified of this claim, the court concludes that the plaintiff has failed to show a genuine dispute of material fact which would warrant the denial of summary judgment on his bad faith claim.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#29]** filed on behalf of defendant State Farm is granted and that all other pending motions are denied as moot. A separate judgment will be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED, this the 2nd day of September, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE